403 S.E.2d 717

Timothy **POWELL**

v.

**WYOMING CABLEVISION, INC.**

No. 19491.

Supreme Court of Appeals of West Virginia.

Feb. 13, 1991.

Rehearing Denied April 24, 1991.

---

D. Grove Moler, Moler & Staton, Mullens, for Wyoming Cablevision, Inc.

Warren R. McGraw, Pineville, for Timothy Powell.

MILLER, Chief Justice:

Wyoming Cablevision, Inc. (the employer), the defendant below, appeals a final order of the Circuit Court of Wyoming County, dated September 25, 1989. The employer asserts that there was insufficient evidence presented at trial to find that it had discharged Timothy Powell, one of its employees, in violation of W.Va.Code, 23–5A–1 (1978).[1] The employer further contends that the trial court erred in refusing to offset Mr. Powell's unemployment compensation benefits against the jury verdict. We disagree, and, accordingly, we affirm the judgment of the lower court.

1. W.Va.Code, 23–5A–1, a provision of the Workers' Compensation Act, provides: "No employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter."

## I.

Timothy Powell was employed as a chief installer for the employer from February, 1983, until October, 1986. His duties included climbing utility poles and running cable lines from the poles to the exterior of homes. On May 22, 1986, Mr. Powell injured the heel of his right foot when he had to jump for safety because the pole he had climbed began to fall.

Mr. Powell was unable to return to work immediately and began receiving temporary total disability (TTD) benefits from workers' compensation. He regularly kept in telephone contact with his employer's office. On August 14, 1986, Mr. Powell's treating physician wrote the employer and advised it that Mr. Powell's recovery could take up to six months. Sometime in late August or early September of 1986, Mr. Powell, apparently on crutches, appeared at the employer's office and inquired if there was any work he might do. He was advised that he could work in the shop repairing converters. Mr. Powell checked with his doctor, who advised him not to do any work that would prohibit him from keeping his foot elevated, and, therefore, he declined this offer.

On October 6, 1986, Mr. Powell's supervisor wrote him that "[i]t is ... our understanding that you will not be able to resume your normal work duties until some undetermined time in the future." [2] Accordingly, Mr. Powell was informed that he had "been removed from the Company payroll records." [3] Mr. Powell was released to return to work on May 26, 1987. He immediately reapplied for his old job; however, the employer refused to rehire him.

On October 23, 1987, Mr. Powell filed suit against the employer alleging that he had been fired in retaliation for filing a workers' compensation claim. Following a two-day trial, the jury awarded Mr. Powell $12,900 in back wages, representing the time from his release to return to work until he secured other employment in February, 1988. The employer appeals.

## II.

Independent of W.Va.Code, 23–5A–1, we established the principle in *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978), that an at-will employee may seek damages from his employer if the employee's discharge contravenes a substantial principle of public policy. [4]

The first occasion we had to address W.Va.Code, 23–5A–1, was in *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980). We recognized, as had other courts, that an employee who is discharged in retaliation for seeking workers' compensation benefits has a cause of action against his employer. *E.g., Sventko v. Kroger Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d

**2.** Approximately two weeks earlier, on September 26, 1986, the employer notified Mr. Powell that his health insurance was being terminated effective October 1, 1986, unless he chose to continue the coverage at his own expense. The parties do not argue whether this act would violate W.Va.Code, 23–5A–2, prohibiting an employer from canceling or decreasing an employee's medical insurance while the employee is receiving temporary total disability benefits. We, therefore, do not address it.

**3.** The text of the employer's letter of October 6, 1986 is:

"As you know, you have been absent from your routine of employment with Wyoming Cablevision due to an injury since May 22, 1986. It is also our understanding that you will not be able to resume your normal work duties until some undetermined time in the future.

"While we regret that you will be unable to work due to your injury, the company is no longer able to continue holding your job open.

"Accordingly, this letter is to inform you that effective the date of this letter, you have been removed from the Company payroll records.

"We wish you a speedy recovery and good health in the future."

**4.** The Syllabus of *Harless* states:

"The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge."

425 (1973).[5] We also held that in the absence of a specific statute, the appropriate statute of limitations was two years, and found Shanholtz's claim to be time barred. Finally, we held that W.Va.Code, 23–5A–1, should be applied prospectively, and made this comment:

> "The statute confers a substantive right upon employees who may be discriminated against in retaliation for their 'receipt of or attempt to receive benefits under this [Workmen's Compensation] chapter.' It is a codification of what we perceive to be the law, that is, it is a contravention of public policy and actionable to discharge an employee because he filed a workmen's compensation claim against his employer." 165 W.Va. at 312, 270 S.E.2d at 183. (Citations omitted).

Five years later, in *Yoho v. Triangle PWC, Inc.*, 175 W.Va. 556, 336 S.E.2d 204 (1985), we were once again asked to find a violation of W.Va.Code, 23–5A–1. The employee had suffered a serious work-related injury, had received workers' compensation benefits, and was unable to return to work immediately. Pursuant to the terms of the collective bargaining agreement, the employee was discharged when she was absent from work for the preceding twelve-month period. We found W.Va.Code, 23–5A–1, inapplicable because the employee "would have been terminated just as quickly under the collective bargaining agreement if she had never applied for those benefits." 175 W.Va. at 562, 336 S.E.2d at 210.[6]

As is apparent from the brief review of our prior decisions, we have not fully addressed the substance of this statute.

Because many statutes, like ours, use the term "discriminate," courts have found guidance in the proof schemes of other antidiscrimination statutes. Ordinarily, the burden is on the plaintiff to prove a prima facie case. If this case is made, the defendant is required to prove some nondiscriminatory basis for its action. Thereafter, the plaintiff must show that the stated reason for the adverse action is untrue or pretextual. *See, e.g., Twilley v. Daubert Coated Prods., Inc.*, 536 So.2d 1364 (Ala.1988); *Axel v. Duffy–Mott Co., Inc.*, 47 N.Y.2d 1, 416 N.Y.S.2d 554, 389 N.E.2d 1075 (1979); *Buckner v. General Motors Corp.*, 760 P.2d 803 (Okla.1988).

We have applied this same burden in discrimination cases in which a violation of our West Virginia Human Rights Act, W.Va.Code, 5–11–1, *et seq.*, is alleged. *See, e.g., City of Ripley v. West Virginia Human Rights Comm'n*, 179 W.Va. 375, 369 S.E.2d 226 (1988); *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986); *State ex rel. West Virginia Human Rights Comm'n v. Logan–Mingo Area Mental Health Agency, Inc.*, 174 W.Va. 711, 329 S.E.2d 77 (1985); *Shepherdstown Volunteer Fire Dep't v. West Virginia Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

Several states have statutes specifying that the discharge must be shown to have been motivated *solely* by the filing of the compensation claim.[7] In the absence of such an express statutory provision, most jurisdictions have found that an employee need only show that the filing of a workers' compensation claim was a substantial factor in bringing about his demotion or termination from employment. A typical statement of the rule is given by the Oklahoma Supreme Court in *Thompson v. Med-*

---

5. Since *Shanholtz* was decided, a number of other courts have found a retaliatory discharge cause of action to exist in the absence of a specific statute where an employee is fired for exercising his workers' compensation rights. *E.g., Murphy v. Topeka–Shawnee County Dep't of Labor Servs.*, 6 Kan.App.2d 488, 630 P.2d 186 (1981); *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981); *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984); *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (1978).

6. Recently, in *O'Dell v. Jennmar Corp.*, 184 W.Va. 280, 400 S.E.2d 288 (1990), we briefly mentioned W.Va.Code, 23–5A–1. However, that case primarily involved a handicap discrimination claim, and the concepts of retaliatory discharge under W.Va.Code, 23–5A–1, were not extensively discussed.

7. *E.g.*, Hawaii Rev.Stat. § 378–32(2) (1985); Md. Ann.Code art. 101, § 39A(a) (1985).

*ley Material Handling, Inc.*, 732 P.2d 461, 463 (Okla.1987):

"[A]n employee may not be discharged *because* of the exercise of rights under the Workers' Compensation Act.... We hold that when retaliatory motivations comprise a significant factor in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violates the intent of section 5." (Emphasis in original; footnote omitted).[8]

*See also Delano v. City of South Portland*, 405 A.2d 222 (Me.1979); *Goins v. Ford Motor Co.*, 131 Mich.App. 185, 347 N.W.2d 184 (1983); *Santex, Inc. v. Cunningham*, 618 S.W.2d 557 (Tex.Civ.App. 1981). *See generally* 2A *Larson's Workers' Compensation Law* § 68.36(c) (1989 & Supp.1990).

■ Accordingly, we hold that in order to make a prima facie case of discrimination under W.Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va.Code, 23–1–1, *et seq.;* and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.[9]

In determining whether there is a nexus between the filing of the workers' compensation claim and the discharge, we take heed of this warning by the New York Court of Appeals in *Axel v. Duffy–Mott Co.*, 47 N.Y.2d at 6, 416 N.Y.S.2d at 556, 389 N.E.2d at 1077:

"[I]n a case premised on an alleged violation of a statute purposed to counter retaliation or other discrimination, we

must keep in mind that those engaged in such conduct rarely broadcast their intentions to the world. Rather, employers who practice retaliation may be expected to seek to avoid detection, and it is hardly to be supposed that they will not try to accomplish their aims by subtle rather than obvious methods.... Moreover, employers are vested with considerable discretion in the hiring and firing of their employees so as to maintain an efficient and productive work force, and the visible manifestations of even a most improperly motivated discharge may be difficult to sort out from a nonretaliatory exercise of this discretion." (Citations omitted).

Because of the usual lack of direct evidence, courts have looked to a variety of factors. Proximity in time of the claim and the firing is relevant, of course. Evidence of satisfactory work performance and supervisory evaluations before the accident can rebut an employer's claim of poor job performance. Any evidence of an actual pattern of harassing conduct for submitting the claim is very persuasive. *E.g., Axel v. Duffy–Mott Co., supra* (immediately after claimant filed for workers' compensation benefits, adverse comments began to appear in her personnel file about her work performance and appearance); *Elzey v. Forest*, 739 P.2d 999 (Okla.1987) (supervisor told employee that he was jeopardizing job by seeking treatment from doctors whose practices were associated with workers' compensation claimants). *Cf. Milner v. Stepan Chem. Co.*, 599 F.Supp. 358 (D.Mass.1984) (following a work-related accident, the employee's supervisor repeatedly harassed him about not reporting the

**8.** The Oklahoma statute, 85 Okla.Stat.Ann. § 5 (1991), is similar to W.Va.Code, 23–5A–1, and provides:

"No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee

who is determined physically unable to perform his assigned duties."

**9.** We recognize, as have other courts, that a compensation claim need not actually be filed so long as the employee suffered a work-related injury and was attempting to file a claim. Thus, an employer can still violate the statute by firing the employee before his claim is filed. *See Cerracchio v. Alden Leeds, Inc.*, 223 N.J.Super. 435, 538 A.2d 1292 (1988); *Thompson v. Kinro, Inc.*, 37 Ohio App.3d 175, 525 N.E.2d 528 (1987); *Buckner v. General Motors Corp., supra.*

injury so as not to spoil the company's safety record). *See generally* 2A *Larson's Workers' Compensation Law* § 68.36(d) at pp. 13–187 to 13–188.

■ When an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. *See, e.g., Gondolfi v. Mid–Gulf Stevedores*, 621 F.2d 695 (5th Cir.1980) (discharge for unexplained tardiness); *Pientka v. Board of Fire Comm'rs*, 125 Ill.App.3d 124, 80 Ill. Dec. 565, 465 N.E.2d 677 (1984) (plaintiff had previously filed a false workers' compensation claim); *Davenport v. City of Des Moines*, 430 N.W.2d 405 (Iowa 1988) (loss of driver's license prevented employee from performing all of his job tasks); *Owens v. Georgia Pac. Corp.*, 535 So.2d 990 (La.App.1988) (numerous warnings for excessive absenteeism prior to work-related injury); *Vollenweider v. New Orleans Pub. Serv., Inc.*, 466 So.2d 804 (La.App.), *writ denied*, 468 So.2d 577 (La.1985) (employee's failure to follow company policy). Other legitimate reasons can arise from business conditions, such as general layoffs involving employees who have not filed compensation claims. *See generally* 2A *Larson's Workers' Compensation Law* § 68.36(d). In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is mere-

ly a pretext for the discriminatory act. *See Twilley v. Daubert Coated Prods. Co., supra; Buckner v. General Motors Corp., supra.*

A more difficult issue arises when an employer fires the worker because he appears unable to resume his former duties or because of a lengthy injury-related absence. Where the employer has a neutral absenteeism policy that permits discharge of an employee who is absent for a specific period of time, courts have generally held that termination of employment under such a policy does not violate a compensation antidiscrimination statute. We used a similar rationale in *Yoho*, where the collective bargaining agreement permitted termination of any employee who was on a leave of absence for more than one year regardless of the reason for the absence. *See also Smith v. Electric Sys. Div. of Bristol Corp.*, 557 N.E.2d 711 (Ind.App.1990); *Rowland v. Val–Agri, Inc.*, 13 Kan.App.2d 149, 766 P.2d 819 (1988); *Galante v. Sandoz, Inc.*, 192 N.J.Super. 403, 470 A.2d 45 (1983), *appeal aff'd*, 196 N.J.Super. 568, 483 A.2d 829 (1984); *Duncan v. New York State Dev. Cen.*, 63 N.Y.2d 128, 481 N.Y. S.2d 22, 470 N.E.2d 820 (1984).

Where, as here, the company does not have a written absenteeism policy, the answer is not so easy. It appears that courts have attempted to set a standard which involves several factors.[10] The court will

---

**10.** Recent legislation has clarified some of the issues in this area, as set out in W.Va.Code, 23–5A–3 (1990):

**"Termination of injured employee prohibited; re-employment of injured employees.**

"(a) It shall be a discriminatory practice within the meaning of section one [§ 23–5A–1] of this article to terminate an injured employee while the injured employee is off work due to a compensable injury within the meaning of article four [§ 23–4–1 et seq.] of this chapter and is receiving or is eligible to receive temporary total disability benefits, unless the injured employee has committed a separate dischargeable offense. A separate dischargeable offense shall mean misconduct by the injured employee wholly unrelated to the injury or the absence from work resulting from the injury. A separate dischargeable offense shall not include absence resulting from the injury or from the inclusion or aggregation of absence due to the injury with any other absence from work.

"(b) It shall be a discriminatory practice within the meaning of section one of this article for an employer to fail to reinstate an employee who has sustained a compensable injury to the employee's former position of employment upon demand for such reinstatement provided that the position is available and the employee is not disabled from performing the duties of such position. If the former position is not available, the employee shall be reinstated to another comparable position which is available and which the employee is capable of performing. A comparable position for the purposes of this section shall mean a position which is comparable as to wages, working conditions and, to the extent reasonably practicable, duties to the position held at the time of injury. A written statement from a duly licensed physician that the physician approves the injured employee's return to his or her regular employment shall be prima facie evidence that the worker is

look to see how quickly the employer terminated the employee after compensation benefits were sought. The severity of the injury as it relates to the employee's ability to perform his accustomed work is also important. Obviously, where the employee has suffered a severe injury that forever limits the employee's ability to perform his accustomed work, the employer should not be penalized for discharging the employee. Where the injury is less serious, further consideration must be given to what is a reasonable recovery period viewed again with the prospect of when the employee will be able to perform his accustomed work. In this regard, the employer is entitled to show that it is economically unfeasible to keep the job open or to hire a temporary substitute.

Illustrative of cases where there has been a prolonged absence as a result of the work-related injury is *Kern v. South Baltimore General Hospital,* 66 Md.App. 441, 504 A.2d 1154 (1986). There, the employee filed a workers' compensation claim after suffering a hand injury. The employee was absent 249 days from work over a two-year period and was fired for excessive absenteeism, even though she claimed that most of her absences were due to the injury. The Maryland court refused to find that the employee had been a victim of a retaliatory discharge:

> "In conclusion, we hold that an employee's protection from discharge in retaliation for claiming statutory benefits does not include protection for excessive absence from work due to work-related injury. *If an employee is disabled on the job and is no longer qualified to perform the duties of his or her job, an employer may terminate that employee when it becomes obvious that the period of disability is not determinable.* This interpretation of § 39A and Art. 101 does not tend, as appellant fears, to discourage employees from seeking medical attention and compensation." 66 Md.App. at 452, 504 A.2d at 1159. (Emphasis added; footnote omitted).

A similar result was reached in *Pericich v. Climatrol, Inc.,* 523 So.2d 684 (Fla.App. 1988), where the employee injured his back, received workers' compensation benefits, and was placed on light duty until his injury improved. Fourteen months later, the employer informed the employee that it was economically infeasible to continue to employ him. In refusing to find that the claimant had been discharged in retaliation for filing a workers' compensation claim, the Florida court explained that "[o]nly when it became apparent Pericich would be physically unable to resume his former position and it was economically infeasible to continue to employ him at less than full duty was he terminated." 523 So.2d at 686.

Where the injury is not severe and the recovery period is not lengthy, courts are inclined to entrust the question of retaliatory discharge to the jury. In *Burrow v. Westinghouse Electric Corp.,* 88 N.C.App. 347, 363 S.E.2d 215, *review denied,* 322 N.C. 111, 367 S.E.2d 910 (1988), the trial court had granted the employer's motion for summary judgment on the retaliatory discharge issue. The employee had injured his leg in early 1985 and returned to work

---

able to perform such duties. In the event that neither the former position nor a comparable position is available, the employee shall have a right to preferential recall to any job which the injured employee is capable of performing which becomes open after the injured employee notifies the employer that he or she desired reinstatement. Said right of preferential recall shall be in effect for one year from the day the injured employee notifies the employer that he or she desires reinstatement: Provided, That the employee provides to the employer a current mailing address during this one year period.

"(c) Any civil action brought under this section shall be subject to the seniority provisions of a valid and applicable collective bargaining agreement, or arbitrator's decision thereunder, or to any court or administrative order applying specifically to the injured employee's employer, and shall further be subject to any applicable federal statute or regulation.

"(d) Nothing in this section shall affect the eligibility of the injured employee to workers' compensation benefits under this chapter."

in June 1985 with a 10 to 15 percent permanent partial disability. Shortly after he returned to work, the employee's leg began to bother him, and he left work early to see a doctor. When he attempted to return to work, he was fired. The appellate court concluded that retaliation was a jury issue.

In *Horn v. Davis Electric Constructors, Inc.*, 395 S.E.2d 724, 727 (S.C.App.1990), the court characterized the employer's duty as follows:

> "We therefore hold that while an employer may discharge an employee who is not permanently totally disabled for inability to perform the duties for which he was hired, the employer must afford the employee a reasonable period of time to demonstrate that he will be able to perform his duties after an injury." (Footnote omitted).

*See also Slover v. Brown*, 140 Ill.App.3d 618, 94 Ill.Dec. 856, 488 N.E.2d 1103 (1986).

### III.

 The employer contends that there was insufficient evidence to support a claim for retaliatory discharge. In Syllabus Point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), we prescribed the factors a reviewing court should consider in ascertaining whether there was sufficient evidence to support a jury verdict:

> "In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved."

In the case at bar, we believe the employee proved a prima facie case. He established that he was employed, he sustained a work-related injury, and he filed for and received workers' compensation benefits. He also presented evidence that his filing of a workers' compensation claim was a significant factor in his termination. The employer's October 6, 1986 letter to the plaintiff indicated that he was being discharged because of his compensable injury. In response, the employer proffered two legitimate reasons for the employee's discharge. The employer contended that the local economy was so bad that the number of cable subscribers had fallen dramatically. This loss of business forced the employer to lay off several employees. Alternatively, the employer argued that Mr. Powell was physically unable to do the job.

In rebuttal, the employee introduced evidence that the employer had maintained the same number of installers during the entire time he was on workers' compensation, had run a help-wanted advertisement in the local newspaper seeking an installer, and had actually hired an installer shortly before Mr. Powell reapplied for his old position. Moreover, when Mr. Powell was physically able to return to work and asked to be rehired, the employer simply told him no without excuse or explanation.

With regard to the employer's claim that Mr. Powell was physically unable to do the work, the evidence showed that within a year of the injury, he was certified by a doctor to return to work. The argument at trial centered on whether the plaintiff's temporary disability justified the employer's decision to fire him four months after the injury. The trial court considered this to be a jury issue, and the employer's instructions relating to its right to terminate were given.[11] We have reviewed the record and find that there was sufficient evidence presented at trial for the jury to find that the employer violated W.Va.Code, 23–5A–1.

---

**11.** No claim is made by the employer as to erroneous instructions, and, consequently, we

affirm the trial court's ruling in this regard.

**708**

## IV.

■ Finally, the employer contends that the trial court erred in refusing to offset Mr. Powell's unemployment compensation benefits against the jury verdict.[12] We addressed and rejected this same argument in *Orr v. Crowder,* 173 W.Va. at 351, 315 S.E.2d at 610, and held: "[T]he trial court did not commit error in holding that unemployment benefits may not be used to reduce an award of damages under the collateral source rule." (Citations omitted).

As aptly stated by the California Court of Appeals in *Billetter v. Posell,* 94 Cal. App.2d 858, 860, 211 P.2d 621, 623 (1949): "Benefits of this character are intended to alleviate the distress of unemployment and not to diminish the amount which an employer must pay as damages for the wrongful discharge of an employee." (Citations omitted). *See also Washington Welfare Ass'n, Inc. v. Poindexter,* 479 A.2d 313 (D.C.App.1984); *Schwarze v. Solo Cup Co.,* 112 Ill.App.3d 632, 68 Ill.Dec. 228, 445 N.E.2d 872 (1983); *Sporn v. Celebrity, Inc.,* 129 N.J.Super. 449, 324 A.2d 71 (1974); *Hall v. Hotel L'Europe, Inc.,* 69 N.C.App. 664, 318 S.E.2d 99 (1984); *Lambert v. Equinox House, Inc.,* 126 Vt. 229, 227 A.2d 403 (1967); *Dehnart v. Waukesha Brewing Co.,* 21 Wis.2d 583, 124 N.W.2d 664 (1963). *See generally* 22 Am.Jur.2d *Damages* § 585 (1988 & Supp.1990). We find no error.

For the foregoing reasons, the judgment of the Circuit Court of Wyoming County is affirmed.

Affirmed.

---

**12.** After the employer refused to rehire Mr. Powell, he received unemployment compensa-

tion benefits until February, 1988, when he was able to secure other employment.