426 S.E.2d 517

**Arnold SIZEMORE, Plaintiff Below, Appellee**

v.

**PEABODY COAL COMPANY, a Delaware Corporation Doing Business in West Virginia; Peabody Holding Company, Inc., a Missouri Corporation; and Eastern Associated Coal Corporation, a West Virginia Corporation, Defendants Below, Appellants.**

**No. 21014.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1992.

Decided Dec. 11, 1992.

Richard G. Rundle, Pineville, for appellee.

C. David Morrison, Steptoe & Johnson, Clarksburg, Stephen P. McGowan, Steptoe & Johnson, Charleston, and Robert Browning, Jr., Bailey, Worrell, Viers & Browning, Pineville, for appellants.

PER CURIAM:

Eastern Associated Coal Corporation (Eastern) appeals a final order of the Cir-

cuit Court of Wyoming County entering judgment on a jury verdict awarding Eastern's former employee, Arnold Sizemore, $1,560,028 in damages for retaliatory discharge. On appeal, Eastern argues that Mr. Sizemore failed to rebut Eastern's showing of a legitimate, nondiscriminatory reason for terminating him. We agree; therefore, we reverse the final order of the trial court.[1]

## I.

In April of 1987, Eastern, a West Virginia corporation, was acquired by Peabody Holding Company, Inc.[2] Among its numerous facilities, Eastern operates a mining complex in Boone County, known as the "Wells Complex." Until the end of 1987, the Wells Complex consisted of a preparation plant, the attendant shop, a mine office, and two operating coal mines, Lightfoot No. 1 and Lightfoot No. 2.

Before January 15, 1988, Mr. Sizemore worked in the Wells Complex mine office as a senior mine clerk. Three other clerks worked with him. All four positions were salaried. The employees performed general administrative duties, including preparing the payroll.

At the end of 1987, Eastern closed the Lightfoot No. 2 mine. As a result, the hourly work force at the Wells Complex was reduced by 170.[3] When operations were suspended at the Lightfoot No. 2 mine and the hourly workforce reduced by nearly 40 percent, Eastern realized it would be necessary to lay off twenty-three salaried employees. Because the workforce was drastically reduced, Eastern concluded that it only needed three clerks to work at the Wells Complex mine office and would

need to lay off one of the four employees working there.

On December 10, 1987, several members of Eastern's management, two in-house attorneys, and Ricklin Brown, a private attorney retained by Eastern, met to devise a legal and equitable system for determining which salaried employees would be laid off. Mr. Brown, who specializes in employment law, advised Eastern to lay off the employees in each of the necessary job categories who had received the lowest scores on their last job performance evaluations. These evaluations had been conducted in May of 1987, months before Eastern realized it would have to lay off several salaried employees. According to Eastern's witnesses, the criteria for these evaluations were designed to be neutral and to ignore factors such as age, race, and workers' compensation history.

Because Mr. Sizemore had the lowest evaluation of the four clerks at the Wells Complex mine office, he was laid off. Mr. Sizemore does not dispute that his most recent performance evaluation was the lowest of the four clerks employed at the Wells Complex mine office or that the company had a legitimate business reason to lay off salaried employees. Rather, he contends that the real reason he was chosen to be laid off was because he had indicated to several Eastern management personnel that he wanted to reopen an old workers' compensation claim.

After his layoff, Mr. Sizemore filed suit against Eastern, alleging that he was laid off because he expressed a desire to reopen his workers' compensation claim, a violation of W.Va.Code, 23–5A–1.[4] Eastern de-

---

**1.** Eastern raises several other assignments of error, which we need not address.

**2.** Mr. Sizemore was originally hired by Eastern. Eastern and Peabody Coal Company are sister corporations, each of which is a separate, wholly-owned subsidiary of Peabody Holding Company, Inc. After Peabody Holding Company acquired Eastern, Mr. Sizemore was offered continued employment with Peabody Holding Company. Mr. Sizemore filed suit against Eastern, Peabody Holding Company, Inc., and Peabody Coal Company. For purposes of this ap-

peal, we will refer to these entities collectively as "Eastern."

**3.** At the same time, another mine, Kopperston No. 1, which was not a part of the Wells Complex, had a severe depletion of coal reserves. Eastern was forced to eliminate a number of shifts at that mine, which resulted in laying off approximately 80 hourly work force employees.

**4.** W.Va.Code, 23–5A–1, provided: "No employer shall discriminate in any manner against any of his present or former employees because of

nied these allegations and asserted that Mr. Sizemore was laid off because of a general work force reduction. A jury trial was held from July 15 through 18, 1991.

At trial, Mr. Sizemore testified that in 1984 he had suffered a work-related back injury, for which he was granted a 6 percent permanent partial disability award. In late November or early December of 1987, Mr. Sizemore aggravated his back injury while deer hunting. Shortly after he reinjured his back, Mr. Sizemore called Gerald Blair, Eastern's supervisor for workers' compensation claims, and Richard Wallace, an employees relations representative, and discussed with them the possibility of reopening his 1984 claim.

Mr. Sizemore testified that Mr. Blair informed him that "salaried people didn't have injuries" and suggested he "apply to [his] major medical instead of compensation[.]" According to Mr. Sizemore, Mr. Blair further warned him that "there was an impending layoff of some salaried people at the mine location and that [he] could be one of them." Mr. Sizemore testified that he took this statement as a veiled threat of termination if he filed a workers' compensation claim. Mr. Sizemore also testified that Mr. Wallace advised him not to petition to reopen his claim. Accordingly, Mr. Sizemore decided not to seek reopening of his 1984 workers' compensation claim.

During Eastern's case-in-chief, Mr. Blair testified that although he had no recollection of his conversation with Mr. Sizemore, he was confident that he never threatened Mr. Sizemore with the loss of his job, because he had no authority in the hiring, firing, or laying off of any employees. Mr. Wallace did recall speaking with Mr. Sizemore; however, he remembered the contents of the conversation much differently.

Mr. Wallace testified that he neither encouraged nor discouraged Mr. Sizemore with regard to reopening his claim. He simply told Mr. Sizemore "[y]ou are going to have to make up your own mind if you want to reopen your claim for medical care."

At the close of the evidence, Eastern moved for a directed verdict. Eastern argued that Mr. Sizemore had failed to rebut its proof of a legitimate nondiscriminatory reason for the lay off as prescribed in our holding in *Powell v. Wyoming Cablevision*, 184 W.Va. 700, 403 S.E.2d 717 (1991). The trial court denied this motion, and the case was submitted to the jury. The jury returned a verdict for the plaintiff and awarded him $60,028 in back pay, $500,000 for emotional distress, and $1,000,000 in punitive damages.

## II.

In *Powell v. Wyoming Cablevision, Inc., supra*, we discussed our law regarding a claim brought based on W.Va. Code, 23–5A–1, which prohibits an employer from discriminating against an employee who receives or attempts to receive workers' compensation benefits. In Syllabus Points 1 and 2 of *Powell*, we explained the key ingredients of such a claim:[5]

"1. In order to make a prima facie case of discrimination under W.Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va.Code, 23–1–1, *et seq.;* and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

Prior to the enactment of W.Va.Code, 23–5A–1, we recognized that the right to receive workers' compensation benefits was a matter of pubic policy, and, consequently, if an employer fired an employee who sought such benefits, the employer could be found liable for retaliatory discharge. *See Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980).

such present or former employee's receipt of or attempt to receive benefits under this chapter."

5. In 1990, the legislature clarified some of the parameters of W.Va.Code, 23–5A–1, by enacting W.Va.Code, 23–5A–3. *See Powell v. Wyoming Cablevision*, 184 W.Va. at 705 n. 10, 403 S.E.2d at 722 n. 10.

"2. When an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act."

■ In Syllabus Point 3 of *Powell*, we reiterated our general rule regarding the sufficiency of the evidence to support a jury's verdict:

" 'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syllabus Point 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984)."

■ Applying these standards, we conclude that the jury's verdict must be set aside. Even if we assume that the plaintiff proved his prima facie case under Syllabus Point 1 of *Powell*,[6] the plaintiff failed to show that Eastern's reason for the discharge was pretextual. The plaintiff did not present any evidence to rebut the employer's showing that the reduction in salaried workforce was necessary because the workload at the mine office significantly decreased. Indeed, on cross-examination, Mr. Sizemore conceded that after the

Lightfoot No. 2 mine closed, there was less work at the Wells Complex mine office and that Eastern had not filled his position with another employee since he had been laid off. Moreover, Mr. Sizemore did not dispute that he had the lowest score in the last job evaluation of the four employees who worked at the Wells Complex mine office. We believe that Eastern's decision to lay off the employee who had the poorest job performance was both legitimate and nondiscriminatory.

■ Accordingly, Eastern's motion for a directed verdict at the close of all the evidence should have been granted in accordance with the rule contained in Syllabus Point 5 of *Adkins v. Inco Alloys International, Inc.*, 187 W.Va. 219, 417 S.E.2d 910 (1992):

" 'When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant.' Syllabus Point 3, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964)."

### III.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Wyoming County.

Reversed.

---

6. We question whether there was sufficient evidence to support the third prong of the prima facie case test, i.e., that "the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee." Syllabus Point 1, in part, *Powell v. Wyoming Cablevision, supra*.