712 S.E.2d 482

William R. HUGGINS and Denise
L. Huggins, Husband and Wife,
Plaintiffs Below, Appellants

v.

The CITY OF WESTOVER SANITARY
SEWER BOARD, A Public Agency; The
City Of Westover, A Municipal Corpora-
tion; and Dave Johnson, Defendants Be-
low, Appellees.

No. 35761.

Supreme Court of Appeals
of West Virginia.

Submitted May 11, 2011.

Decided June 14, 2011.

**574**

Jacques R. Williams, Hamstead, Williams & Shook PLLC, Morgantown, WV, for Appellants.

Barbara G. Arnold, MacCorkle Lavender & Sweeney, PLLC, Charleston, WV, for Appellees.

PER CURIAM:

The plaintiffs below and appellants herein, William and Denise Huggins (hereinafter "the Hugginses"), appeal from an order entered July 12, 2010, by the Circuit Court of Monongalia County. By that order, the circuit court granted summary judgment to the defendants below and appellees herein: The City of Westover Sanitary Sewer Board (hereinafter "Sewer Board"); the City of Westover (hereinafter "City"); and Dave Johnson (hereinafter "Mayor Johnson")(collectively, referred to as "the appellees").[1] In that order, the lower court's grant of summary judgment was premised on its determination that Mr. Huggins was not the victim of discrimination because he had voluntarily ceased work rather than being terminated. On appeal to this Court, the Hugginses argue that Mr. Huggins was wrongfully terminated from his employment with the Sewer Board in violation of the anti-discrimination provisions of the Workers' Compensation Act.[2] Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we find that the lower court erred in granting summary judgment to the City, the Sewer Board, and Mayor Johnson. We find that Mr. Huggins was wrongfully terminated from employment, and, therefore, we reverse the circuit court's contrary rulings and remand the case for entry of an order granting the Hugginses' partial motion for summary judgment. Further, Mr. Huggins asserts that he is entitled to an award of punitive damages. However, we find that punitive damages are improper; thus, the circuit court is affirmed in that regard.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Huggins had been employed by either the City or the Sewer Board for over twenty

---

1. The order also denied the Hugginses' motion for partial summary judgment.

2. *See* W. Va.Code § 23–5A–1 *et seq.*

years. At the time of his departure from employment, he was working as a field supervisor for the Sewer Board. Pertinent to the case before this Court, Mr. Huggins, sometime near October 14, 2008, approached Mayor Johnson about transferring from his job with the Sewer Board to a job with the City. Mayor Johnson suggested that the request be put in writing. By letter dated October 14, 2008,[3] Mr. Huggins wrote as follows:

> Dear Mayor Johnson,
>
> I am writing this letter in reference to our conversation on October 14, 2008. I would like to transfer to work at the garage and leave my position in the Sewer Department. I would be willing to assist with any questions that may pertain to the sewer department if needed.
>
> I am under too much stress at the present time and it has effected [sic] been affecting my health. I am taking medication to help with the stress but it doesn't seem to take care of the stress as it should and I may need to have it changed. I don't want this to affect my performance at work or make a wrong decision that could affect the City of Westover in any way. I feel at the present time that this move would be in the best interest of the City of Westover and me. I would like to thank you for consideration in this matter.
>
> Sincerely,
>
> William R. Huggins

Thereafter, while still employed by the Sewer Board, on October 27, 2008, Mr. Huggins suffered an injury in the course of his employment for which he was approved for workers' compensation benefits. On November 12, 2008, the Sewer Board met and on its agenda was the October 14, 2008, letter from Mr. Huggins. The Sewer Board voted to act on the "resignation" portion of the letter, effective November 12, 2008. Mr. Huggins, who had not returned to work due to his compensable injury, learned on December 15, 2008, that his health insurance had ceased. Mr. Huggins claims that he learned he was no longer employed only upon receiving the

December notice regarding the cessation of his health insurance.

Mr. Huggins filed a lawsuit alleging that a violation of the Workers' Compensation Act had occurred when Mr. Huggins' health insurance was terminated while he was off of work recovering from a compensable work-related injury, and, further, that he had been wrongfully terminated. The response from the City, the Sewer Board, and Mayor Johnson was that Mr. Huggins was no longer an employee due to his own resignation.

The appellees filed a motion for summary judgment with the lower court, alleging that the Hugginses had no basis in law for their complaint. The Hugginses filed a motion for partial summary judgment. The circuit court granted summary judgment to the appellees, finding that "[t]he Sewer Board did not fire, discharge, or cause Mr. Huggins to be involuntarily terminated-he voluntarily resigned from his employment in order to be available for another position." Moreover, the lower court stated that "[t]he action on the part of the Sewer Board to approve Mr. Huggins' resignation/transfer was at Mr. Huggins' behest.... The Hugginses' health insurance ceased as a consequence of Mr. Huggins' resignation." The Hugginses then appealed to this Court.

## II.

### STANDARD OF REVIEW

This case is before this Court on appeal from the circuit court's order granting summary judgment in favor of the appellees. It has long been held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). In undertaking our *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court:

> "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty*

---

**3.** The letter was originally unsigned. At the request of Mayor Johnson, Mr. Huggins signed the letter around November 21, 2008, but did not change the origination date.

& Surety Co. v. Federal Insurance Co. of New York, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, Andrick v. Town of Buckhannon, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, Painter, 192 W.Va. 189, 451 S.E.2d 755. Moreover,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, Painter, id. We are also cognizant that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, Painter, id. Mindful of these applicable standards, we now consider the substantive issues raised herein.

## III.

## DISCUSSION

On appeal to this Court, the Hugginses assert the following four assignments of error: (1) that the circuit court erred in its finding that Mr. Huggins had not been discriminated against in violation of the Workers' Compensation Act; (2) that the lower court erred in ruling that Mr. Huggins could not transfer from the Sewer Board to the City because they are separate legal entities; (3) that the trial court improperly found that Mayor Johnson had not committed breach of a contract, fraud, or misrepresentation, which should have been questions for jury determination; and (4) that the circuit court incorrectly determined that the Governmental Tort Claims and Insurance Reform Act[4] barred Mr. Huggins' punitive damage claims as a matter of law. In response, the appellees assert that the Hugginses are unable to state a claim for relief as Mr. Huggins was

not terminated, but, rather, he resigned. Further, the appellees argue that there is no basis for punitive damages because such damages are prohibited by statute.

We agree with Mr. Huggins' contention that he was involuntarily terminated from his employment in violation of the Workers' Compensation Act.[5] However, we also find that punitive damages are not suitable under the facts of this case. We will address each issue individually. First, we will focus on the Workers' Compensation Act's anti-discriminatory provisions. Then, we will turn our attention to the appropriateness of punitive damages.

### A. Workers' Compensation Discrimination

Mr. Huggins claims that he was terminated in violation of the anti-discrimination provisions of the Workers' Compensation Act; however, the appellees contend that Mr. Huggins resigned, which, as argued by the appellees, makes the anti-discrimination provisions inapplicable. As recognized by the West Virginia Legislature and by this Court, employees are protected against discrimination in their employment when such discrimination is attendant to workers' compensation benefits. Succinctly, "[n]o employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits[.]" W. Va.Code § 23–5A–1 (1978) (Repl.Vol.2010). We previously have explained that,

> [i]n order to make a prima facie case of discrimination under W. Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W. Va.Code, 23–1–1 et seq.; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

---

4. See W. Va.Code § 29–12A–1 et seq.

5. Because of the manner in which we decide the first assignment of error, it is unnecessary to address the second and third issues asserted on appeal. We will note that, on remand, Mr. Hug-

gins is not precluded from litigating the liability theories of breach of contract, fraud, and misrepresentation. However, we will point out that, while there may be multiple theories of liability, there can be only one recovery.

Syl. pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991).

 Further guidance is found in W. Va. Code § 23–5A–3(a) (1990) (Repl.Vol.2010), which states that

> [i]t shall be a discriminatory practice within the meaning of section one of this article to terminate an injured employee while the injured employee is off work due to a compensable injury within the meaning of article four of this chapter and is receiving or is eligible to receive temporary total disability benefits, unless the injured employee has committed a separate dischargeable offense. A separate dischargeable offense shall mean misconduct by the injured employee wholly unrelated to the injury or the absence from work resulting from the injury. A separate dischargeable offense shall not include absence resulting from the injury or from the inclusion or aggregation of absence due to the injury with any other absence from work.

The parties disagree as to what actions precipitated the change in Mr. Huggins' employment status. The crux of this Court's analysis centers on whether Mr. Huggins was terminated while off work and receiving temporary total disability benefits due to his compensable injury, or, instead, whether Mr. Huggins resigned from employment.

The evidence before the Court is undisputed in regard to the fact that Mr. Huggins had a conversation with Mayor Johnson, then reduced his understanding of that conversation to writing. The most pertinent part of that writing stated that "I would like to transfer to work at the garage and leave my position in the Sewer Department." The circuit court interpreted this language as follows: "The Sewer Board did not fire, discharge, or cause Mr. Huggins to be involuntarily terminated—he voluntarily resigned from his employment in order to be available for another position." We disagree with the circuit court's interpretation.

Notably, Mr. Huggins' letter never used any word such as "resignation" or any form thereof. While Mr. Huggins' intent was clear that he wanted to work at the garage, he wanted to accomplish this through a transfer of employment from one position to the other. The factual time line also supports the conclusion that Mr. Huggins never intended his letter to be a letter of resignation. The conversation with Mayor Johnson regarding a transfer of employment occurred on October 14, 2008, which conversation resulted in a written letter memorializing the wishes of Mr. Huggins. Thereafter, on October 27, 2008, Mr. Huggins was injured while on the job. Had the October 14, 2008, letter been intended as a letter of resignation, it is difficult to imagine that Mr. Huggins would still have been working on the date of the injury without some plans for when his leave, resulting from his "supposed" resignation from employment, would commence. No such plans had been made. Further, the letter notifying Mr. Huggins that his health coverage had ceased referred to the date of November 12, 2008, which was the date of the Sewer Board's meeting wherein it voted to accept the "resignation" of Mr. Huggins. If Mr. Huggins truly was attempting to resign as averred by the appellees, there would be no reason to "accept" his resignation. This letter is not a resignation letter as asserted by the Sewer Board. Rather, it is more in the nature of a letter of inquiry regarding transfer of employment. The Sewer Board never should have "acted" upon this letter unless and until Mr. Huggins had transferred to employment with the City. The Sewer Board's "acceptance" of his "resignation" makes no sense. The letter itself requests a transfer and does not seek resignation. Therefore, the evidence supports only one conclusion: that Mr. Huggins wanted to continue his current work until he could transfer to work with the city garage, at which time he would leave his employment with the Sewer Board. Accordingly, we disagree with the lower court's determination that Mr. Huggins resigned from employment.

 The uncontroverted evidence leads to the conclusion that Mr. Huggins was terminated, and that the appellees engaged in a discriminatory practice when they decided to terminate Mr. Huggins, an injured employee, while he was off work due to a compensable injury and was receiving temporary total disability benefits. Normally, our analysis

would not stop with this determination. *See* Syl. pt. 2, *Powell*, 184 W.Va. 700, 403 S.E.2d 717 ("When an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, non-pretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act."). However, in this case, the appellees failed to prove a legitimate, nonpretextual, and nonretaliatory reason for their discharge of Mr. Huggins.[6] Because the appellees refused to acknowledge their termination of Mr. Huggins, their evidence lacked any element of a legally appropriate reason for the termination. Having determined that the appellees terminated Mr. Huggins in violation of the anti-discrimination policies set forth in the Workers' Compensation Act, we hereby reverse the lower court's award of summary judgment to the appellees. Finding only one conclusion to be drawn from the evidence, the case is remanded to the circuit court for entry of an order granting Mr. Huggins' motion for partial summary judgment.[7]

## B. Punitive Damages

■ The final issue to address in this case is the lower court's determination that the Governmental Tort Claims and Insurance Reform Act barred Mr. Huggins' claim for an award of punitive damages. The lower court relied on W. Va.Code § 29–12A–7(a) (1986) (Repl.Vol.2008), which states:

> Notwithstanding any other provisions of this code or rules of a court to the contrary, in an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee:
>
> (a) In any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited.

Mr. Huggins concedes that the statute, indeed, prevents punitive damages awards against a political subdivision. However, Mr. Huggins asserts that Mayor Johnson was a named party in both his individual capacity as well as in his official capacity with the named political subdivisions, and, thus, Mr. Huggins argues that the statute does not prohibit punitive damage awards against an employee of a political subdivision who has been sued in his individual capacity.[8]

Therefore, this issue turns on whether Mayor Johnson was sued in his individual

---

6. We further note that Mr. Huggins' medical benefits were adversely affected in contravention of the anti-discrimination statutes. W. Va.Code § 23–5A–2 (1982) (Repl.Vol.2010) states as follows:

> Any employer who has provided any type of medical insurance for an employee or his dependents by paying premiums, in whole or in part, on an individual or group policy shall not cancel, decrease his participation on behalf of the employee or his dependents, or cause coverage provided to be decreased during the entire period for which that employee during the continuance of the employer-employee relationship is claiming or is receiving benefits under this chapter for a temporary disability. If the medical insurance policy requires a contribution by the employee, that employee must continue to make the contribution required, to the extent the insurance contract does not provide for a waiver of the premium.

7. Whether an adverse employment action was motivated by a discriminatory animus is ordinarily a jury question. However, we find that the particular facts of this case are settled. The parties differ simply as to the implication of the

facts. Therefore, we find no genuine issues of material fact such that would be considered questions for the jury. *Cf. Conrad v. ARA Szabo*, 198 W.Va. 362, 370, 480 S.E.2d 801, 809 (1996) ("[T]he issue of discriminatory animus is generally a question of fact for the trier of fact, especially where a prima facie case exists. The issue does not become a question of law unless only one conclusion could be drawn from the record in the case." (citation omitted)).

8. Alternatively, Mr. Huggins contends that the Governmental Tort Claims and Insurance Reform Act does not apply to this case. His argument relies on W. Va.Code § 29–12A–18 (1986) (Repl.Vol.2008). This issue was inadequately briefed and, we will, therefore, not address it. *See Cooper v. City of Charleston*, 218 W.Va. 279, 290, 624 S.E.2d 716, 727 (2005) (per curiam) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." (citations omitted)); *State Dep't of Health & Human Res. v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d

capacity, which would allow an assessment of punitive damages, if warranted. The underlying complaint filed in the circuit court is controlling to our decision. We have reviewed the complaint and have failed to find any language that would suggest that Mayor Johnson was sued in his individual capacity. Because the complaint failed to set out a cause of action against Mayor Johnson in his individual capacity, the circuit court was correct in finding that Mr. Huggins could not recover punitive damages. The lower court's finding in this regard is hereby affirmed.

## IV.

### CONCLUSION

For the foregoing reasons, the lower court's finding that Mr. Huggins was not the victim of discrimination in violation of the workers' compensation statutes, is hereby reversed, and this case is remanded for entry of an order granting Mr. Huggins' motion for partial summary judgment. Moreover, the circuit court's determination that Mr. Huggins is not entitled to punitive damages against Mayor Johnson is affirmed.

Affirmed, in part; Reversed, in part; and Remanded.

827, 833 (1995) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim ...." (citation omitted)).