STATE OF WEST VIRGINIA

**Richard Friel,**
**Plaintiff Below, Petitioner**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 12-1470** (Randolph County 11-C-199)

**Kenton Meadows Company, Inc.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Richard Friel, by counsel Roger D. Forman, appeals the order of the Circuit Court of Randolph County granting summary judgment in favor of respondent. Respondent Kenton Meadows Company, Inc., by counsel Kurt E. Entsminger, William J. Hanna, and Phillip Estep, filed a response in support of the circuit court's order. Petitioner has filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Richard Friel was injured on January 19, 2011, while employed as a rock crusher operator by Respondent Kenton Meadows Company, Inc. Petitioner's normal duties consisted of controlling the feeding of rocks into the jaws of a rock crusher. At times, a specially installed hydraulic hammer was used to help break up larger rocks, thereby speeding up the overall rock crushing process. However, respondent had operated its rock crushing equipment at this quarry without the hydraulic hammer for approximately fifteen years before installing the hammer. Petitioner had worked at the quarry for approximately eight years.

At the time of petitioner's accident, the hammer was not in use and had not been in use for several days. During the course of the rock crushing operations, it was common for a large rock to become lodged in the jaws of the crusher. On the day of the incident, this occurred at least twice, once during the morning hours and once at approximately 4:00 p.m. According to the testimony of respondent's employees, the normal procedure is to allow other rocks to continue to pass through the crusher until the larger rock becomes dislodged. Petitioner testified to the same, stating that the "normal routine was to run extra rock up on it to try to get it where it would feed through and get it to crush up."

On the first occasion of a lodged rock on the date in question, petitioner's foreman, Ezra

1

Westfall, was present. At that time, petitioner followed the normal procedure and continued to feed other rocks into the machine until the large rock became dislodged. However, during the second incident of a lodged rock, Westfall was not present. Petitioner initially followed normal procedures and continued to feed rocks through the crusher in an attempt to dislodge the large rock. However, petitioner then climbed down from his operator's station and entered the feeder area next to the jaws of the crusher. Prior to entering the machine, petitioner locked out and tagged the feeder but did not lock out and tag the jaws of the crusher; therefore, the jaws of the crusher continued to operate. Respondent's employees testified that it was a known safety policy that employees were not to enter the feeder without locking out the jaws of the crusher or without putting on fall protection to prevent the employee from falling into the operating jaws. Petitioner also testified that he knew that entering the feeder in the manner he did was a violation of Mine Health and Safety Administration ("MSHA") guidelines. In order to enter the feeder, petitioner passed around a safety cable that was in place to prevent a person from entering the feeder. He did not wear a harness or any other form of fall protection. Upon entering the feeder, he shoveled and threw rocks into the jaws of the crusher in an attempt to dislodge the larger rock. As he was doing so, a rock rolled down, struck him in the leg, and knocked him on top of the large rock that was lodged in the jaws of the machine. Two coworkers pulled petitioner to safety, but not before his leg was injured.

Immediately following the accident, petitioner was transported to the hospital by Westfall. During the ride, petitioner and Westfall concocted a story that they agreed they would tell others regarding how the accident occurred in which they would report that petitioner injured his foot from slipping on a ladder due to snowy conditions. There is sharp dispute regarding whether petitioner was a willing participant in making up the story or whether Westfall coerced him into telling the false story. After this false story was discovered, Westfall was demoted from his supervisory position.

As an employee of respondent, petitioner was covered under respondent's healthcare plan, wherein respondent paid 75% of the cost of the healthcare premiums while petitioner paid 25%. Prior to the incident in question, the 25% was deducted from petitioner's checks. However, after petitioner was injured by the rock crusher, no money was collected because petitioner was not receiving a weekly check from respondent. Petitioner remained off work for fourteen months. Between January 19, 2011, and October 31, 2011, respondent continued to pay its 75% share of the premium, but petitioner did not pay his own 25% share. Moreover, during this same period, respondent paid petitioner's 25% share. In August of 2011, respondent decided to initiate steps to terminate petitioner's health insurance benefits due to his failure to pay his portion of the premium. Respondent's personnel manager, Matt Dittman, contacted its insurance agent, Sherry Thomas. On October 11, 2011, respondent sent a letter to petitioner informing him that he had not paid his share of the premiums, and noted that if he did not return to work by October 28, 2011, they would no longer continue to pay his premium. Petitioner did not respond to this letter and did not return to work. In pertinent part, the letter, drafted by Thomas then placed on letterhead by Dittman, stated as follows:

> Our records indicate that you have been away from work at Kenton Meadows
> Company Inc. since January 19, 2011. During this time period Kenton Meadows

2

Company Inc. has paid your medical benefits so you continue to be covered under the Kenton Meadows Company Inc. Group Medical Plan.

Although Kenton Meadows Company Inc. has paid your premiums from January 19, 2011 to current, effective October 28, 2011, if you have not returned to work, we will no longer pay your premium.

If you do not return to work by October 28, 2011, you will terminate from the Kenton Meadows Company Inc. effective October 31, 2011, with the right to elect COBRA (Consolidated Omnibus Budget Reconciliation Act).

Thereafter, Ceridian Company subsequently sent petitioner a COBRA notice advising him that he had the right to continue his health insurance benefits by paying the full amount of his premiums. The notice stated that the qualifying event for COBRA coverage was "termination of employment."

Petitioner then filed an action asserting claims of deliberate intent, fraud, and wrongful termination against respondent. Both petitioner and respondent filed motions for summary judgment, and a hearing was held on October 23, 2012. On November 15, 2012, the circuit court entered an order granting summary judgment in favor of respondent. As to the deliberate intent claim, the circuit court found that petitioner failed to prove all of the elements of West Virginia Code § 23-4-2(d)(2)(ii), specifically subparagraphs (A) and (B). The court found that the hydraulic hammer was not a safety device and was not required to run the rock crusher. The court also found no intentional exposure as there was no unsafe working condition and that petitioner's actions were taken against the directives of his employers. As to the fraud count, the court concluded petitioner did not rely upon any false representations by respondent and he was not the victim of any deception, as he was a participant in the deception. As to wrongful termination, the circuit court found that there was no decision ever made to terminate petitioner. The court found that the letter contained a typographical error and that none of the communication should have been construed to terminate petitioner's employment. Petitioner now appeals from the order granting summary judgment in favor of respondent.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson [v. Liberty Lobby, Inc.]*, 477 U.S. [242] at 252, 106 S.Ct. [2505] at 2512, 91 L.E.2d [202] at 214 [1986]." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 60, 459 S.E.2d 329, 337 (1995).

Petitioner asserts three assignments of error on appeal. First, petitioner argues that the court erred by ruling that petitioner had not been wrongfully discriminated against in violation of West Virginia Code § 23-5A-1. Petitioner relies on the October 11, 2011, letter, arguing that the letter served as a termination notice and that he was terminated based on his injury. Respondent states that the letter related to the termination of petitioner's health insurance benefits based on his failure to pay his portion of the premium, and although it contained a typographical error, the

3

letter clearly was not intended as a termination notice.

> "In order to make a prima facie case of discrimination under W.Va. Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, [§] W.Va. Code, 23–1–1 *et seq.;* and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee." Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.,* 184 W.Va. 700, 403 S.E.2d 717 (1991).

Syl. Pt. 4, *Smith v. Apex Pipeline Services, Inc.*, 230 W.Va. 620, 741 S.E.2d 845 (2013). We agree with the circuit court's finding in its "Proposed Order Granting Defendant's Motions for Summary Judgment and Denying Plaintiff's Motions for Summary Judgment" that "there is no credible evidence in this case from which it may reasonably be inferred that [respondent] made any decision to terminate [petitioner's] employment." This finding is further supported by this Court's holding in *Smith* that a clerical error cannot be the basis of a workers' compensation discrimination claim. The letter dealt solely with insurance benefits and COBRA coverage, and did not contain any of the normal terminology related to termination of employment. Thus, we find no error in the circuit court's grant of summary judgment on the workers' compensation discrimination claim.

Next, petitioner argues that the court erred by ruling that petitioner had not proven a prima facie case of deliberate intent. Petitioner argues that the circuit court erred in finding that he had not proven two of the statutory elements found in West Virginia Code § 23-4-2(d)(2)(ii)(A) and (B). The provisions the circuit court found unproven were as follow:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition; . . . .

This Court finds no error in the circuit court order granting summary judgment regarding the deliberate intent claim in this action. The circuit court concluded, as a matter of law, that the hydraulic hammer was not a safety device and was used only to expedite petitioner's job. Moreover, the circuit court noted that respondent was never cited by MSHA for a safety violation regarding the absence of this hammer in the fifteen years it operated the quarry without the hammer, and even petitioner's expert agreed that there was no legal requirement that the hammer be used with the rock crusher. As to petitioner's allegation that he was required to enter the feeder in order to dislodge the large rock from the jaws of the crusher, we agree with the circuit court's finding that there is no genuine issue of material fact in this regard. The facts show that petitioner was aware and had been previously warned that he was not to enter the feeder while the jaws of the crusher were still running and without fall protection. Thus, this Court

4

agrees with the finding that there was no specific unsafe working condition created by respondent. As we have previously stated, "[w]here an employee creates a specific unsafe working condition by not following expected procedures, a deliberate intention action cannot be maintained against the employer." *Mumaw v. U.S. Silica Co.,* 204 W.Va. 6, 12, 511 S.E.2d 117, 123 (1998). Additionally, we find that there was no intentional exposure to an unsafe working condition. This Court finds that summary judgment as to this count was properly granted.

Finally, petitioner argues that the court erred by granting summary judgment against petitioner in his claim that respondent committed a fraud against him. Specifically, petitioner argues that the foreman, Ezra Westfall, committed fraud by filing a false statement to MSHA, and by threatening petitioner with termination should he fail to agree to falsifying the story as to how the injury occurred. In West Virginia, the essential elements in an action for fraud are:

> (1) That the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Syl. Pt. 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981). We agree with the circuit court's findings that petitioner did not prove fraud in this matter. Petitioner did not rely upon any false representations made by Westfall, as he was well aware of how the accident occurred. Moreover, as the circuit court noted, petitioner continued to tell the false story of how the accident occurred months afterward. Without showing that petitioner was a victim of a deception committed against him by petitioner or that he relied on the deception to his detriment, petitioner cannot prove an actionable claim for fraud. Thus, the grant of summary judgment was proper in this matter.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 18, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II