IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

No. 11-1610

**FILED**

**April 4, 2013**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

JASON S. SMITH
Plaintiff Below, Petitioner

v.

APEX PIPELINE SERVICES, INC.,
Defendant Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable Tod J. Kaufman, Judge
Civil Action No. 09-C-2087

AFFIRMED

Submitted: February 19, 2013
Filed: April 4, 2013

Charles M. Love, IV, Esq.                     Mary H. Sanders, Esq.
Marvin W. Masters, Esq.                       J. Todd Bergstrom, Esq.
The Masters Law Firm lc                       Huddleston Bolen, LLP
Charleston, West Virginia                     Charleston, West Virginia
Attorneys for Petitioner                      Attorneys for Respondent

The opinion of the Court was delivered PER CURIAM.

Justice Workman concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1. "A circuit court's entry of summary judgment is reviewed de novo." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

2. "'"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 2, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

3. "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

4. "In order to make a prima facie case of discrimination under W.Va. Code, 23-5A-1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were

i

instituted under the Workers' Compensation Act, W.Va. Code, 23-1-1, *et seq.*; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee." Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991).

5. "'A plaintiff may establish a "deliberate intention" in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in [W.Va. Code § 23-4-2(d)(2)(ii) (2010)].' Syl. Pt. 2, *Mayles v. Shoneys, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990)." Syl. Pt. 3, *Tolley v. ACF Industries, Inc.*, 212 W.Va. 548, 575 S.E.2d 158 (2002).

Per Curiam:

This case is before this Court upon the appeal of a final order of the Circuit Court of Kanawha County, West Virginia, entered on October 18, 2011, granting summary judgment in favor of Respondent Apex Pipeline Services, Inc. ("Apex"), in a "deliberate intention" action filed pursuant to West Virginia Code § 23-4-2(d)(2)(ii) (2010), and which also alleged workers' compensation discrimination. On appeal, Petitioner Jason S. Smith contends that the circuit court erred in granting summary judgment on both claims because genuine issues of material fact exist as to whether Apex acted with deliberate intention to cause the petitioner's injury, and whether Apex refused to rehire the petitioner in retaliation for filing a workers' compensation claim. This Court has carefully considered the briefs and arguments of the parties, the appendix record, and the applicable legal authority. For the reasons set forth below, the order of the circuit court is affirmed.

## I. Facts and Procedural Background

On or about September 4, 2008, the petitioner was hired by Apex as a general laborer to work on a pipeline project in Boone County, West Virginia. According to Robert Keaton, Apex's Vice President of Operations and the petitioner's supervisor on the project, Apex routinely hires "out of the union hall" for pipeline projects and specifically asks for "pipeline laborers." He testified that these workers are "supposed to be trained professionals

1

when they come [however], we always put them with our trained people until we figure out if they are actually what they say they are."[1]

At the end of the workday on September 30, 2008, two pipes were laid side by side diagonally across a trench so that they could be lowered into the trench for welding the next morning. According to Mr. Keaton and Christopher Graham, the side boom operator on the project, the pipes were secured by a wooden chock on one side of the pipes and, on the other side, were cradled in loose dirt that was removed from the trench.[2] After the petitioner placed the strap from the side boom around the center of one of the pipes, Mr. Graham lifted it with the side boom in order to lower it into the trench. Both Mr. Keaton and Mr. Graham testified that it is the responsibility of the laborers (here, the petitioner) to then move the chock flush to the pipe that remained lying across the trench. However, the petitioner failed to move the chock to the remaining pipe and, as a result, that pipe was left unsecured.[3] Then, when the petitioner entered the trench in order to set the skids on which

---

[1]Mr. Keaton further testified that he "give[s] the safety meetings on Monday mornings" and "closely monitor[s] the whole place every day."

[2]According to Mr. Keaton, one of the reasons the pipe is secured is because if it "roll[s] to the ground or rock," the pipe's coating becomes damaged, which could cause gas to escape through the pipe.

[3]In its order granting summary judgment, the circuit court agreed with Apex that the evidence presented "demonstrate[d] that securing the pipe was the responsibility of the laborers" and that the petitioner "failed to secure the remaining pipe after its companion pipe was lifted." The petitioner does not dispute either of these facts in this appeal.

2

the first pipe would be set, the unsecured pipe rolled into the trench and struck the petitioner in the back.[4] The petitioner sustained back and other injuries as a result of the accident. He subsequently applied for and received workers' compensation benefits for his injury.

In May of 2009, even though he was physically unable to perform his pre-injury job duties, the petitioner contacted Apex to inquire whether the company had any work.[5] Mr. Keaton advised him that there was no available work at that time. He explained that because the project for which the petitioner was specifically hired was completed, he and many other workers hired for the project were laid off. More specifically, he testified that there were "lots of them we didn't bring back[,]" that "[w]e [were] done with the ones that we called out of the union hall [, and] [a]s their job finishes, we send them back to the union hall." With regard to the petitioner's employment at Apex, Mr. Keaton testified that "he

---

[4]Mr. Keaton, who has worked in the pipeline industry for more than thirty years, testified that he has never seen a pipe roll into a trench in the manner that occurred in this case.

[5]Although the petitioner asserts that he was released to work "without restriction" when he contacted Apex in May of 2009, the evidence does not support this assertion. According to an Independent Medical Evaluation Report dated March 19, 2009, the evaluating physician, Dr. William Hoh, wrote that the petitioner "does not believe that he could return to his pre-work duties. It is my opinion that it is unlikely that he will return to his pre-injury job duties." Furthermore, in Plaintiff's Objections, Answers and Responses to Defendant Apex Pipeline Services, Inc.'s First Set of Interrogatories and Requests for Production of Documents, filed January 27, 2010, the Petitioner indicated that he "continues to suffer from injuries which have prevented his employability," and that he has not been released by his treating physician to return to work. Subsequently, during the course of his March 11, 2010, deposition, the petitioner testified that "I am released to go back to work on light duty."

3

[was] laid off. No one terminated him or discharged him, because we [were] done with his services." Moreover, the petitioner testified that, following his conversation with Mr. Keaton, he believed there was no available work at Apex.

On or about May 21, 2009, the petitioner filed for unemployment compensation benefits. The required "Request for Separation Information" form stated that the petitioner was separated from employment due to "Lack of Work." However, Pamela D. Perry,[6] Secretary/Treasurer of Apex, also indicated on the form that the reason for the petitioner's separation was "discharge" and that he was "injured on job[;] workers comp. injury–settlement granted 4/22/09." When the petitioner contacted Ms. Perry to inquire about the discrepancy on the form,[7] she acknowledged her error and took immediate action to correct it.[8] Soon thereafter, the petitioner was awarded unemployment compensation benefits.

---

[6]At the time Ms. Perry gave her deposition in this matter, she was known as Pamela Moss.

[7]The petitioner contacted Ms. Perry because his application for unemployment compensation benefits was denied.

[8]More specifically, Ms. Perry testified that she "checked the wrong box." She further testified that she "called the judge, and the judge called me back, and I explained to her that I was unaware up until [the petitioner] had called me that I had made an error on the form, and I did, and I explained to her what had happened, and she awarded him his unemployment."

On November 6, 2009, the petitioner filed the instant action alleging deliberate intention and workers' compensation discrimination.[9] On August 11, 2011, Apex filed a motion for summary judgment. Following a hearing on the matter, the circuit court entered its Order Granting Defendant's Motion for Summary Judgment, in which it concluded that the petitioner failed to present evidence supporting four of the five elements required for a deliberate intention claim as set forth in West Virginia Code § 23-4-2(d)(2)(ii)(A)-(D), and further failed to demonstrate that the petitioner's filing of a workers' compensation claim was a significant factor in Apex's decision not to rehire him, in violation of West Virginia Code § 23-5A-1 (2010).[10] This appeal followed.

---

[9]Through the Complaint, the petitioner also alleged that Apex's negligence proximately caused the petitioner's injuries. It is axiomatic that, under West Virginia Code § 23-2-6 (2010), qualifying employers are immune "from common-law tort liability for negligently inflicted injuries." *Bias v. Eastern Assoc. Coal. Corp.*, 220 W.Va. 190, 194, 640 S.E.2d 540, 544 (2006). Nevertheless, the petitioner's negligence allegation is not addressed in the circuit court's summary judgment order, nor does the record herein indicate the status of the claim.

[10]The circuit court's order also concluded that the petitioner failed to present sufficient evidence that Apex unlawfully discriminated against the petitioner in violation of either West Virginia Code § 23-5A-3(a) (2010) (providing, in relevant part, that it is a discriminatory practice to terminate an injured employee while he or she is off work and receiving temporary total disability benefits) or West Virginia Code § 23-5A-3(b) (providing, in relevant part, that it is a discriminatory practice for an employer to fail to reinstate an injured employee who demands reinstatement to his or her former position "provided that the position is available and the employee is not disabled from performing the duties of such position"). The petitioner does not appeal the circuit court's ruling in this regard.

5

## II. Standard of Review

This case is before the Court on appeal of the circuit court's order granting summary judgment in favor of Apex. Accordingly, our review of this appeal is de novo. As we held in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 190, 451 S.E.2d 755, 756 (1994), "[a] circuit court's entry of summary judgment is reviewed de novo." In performing our plenary review, we are mindful that

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 2. Moreover, both this Court and the court below "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Id.* at 192, 451 S.E.2d at 758.

> Finally, we note that

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 56, 459 S.E.2d 329, 333 (1995).

### III.  Discussion

### A.  Workers' Compensation Discrimination Claim

The first issue for our review is whether the circuit court properly concluded that the petitioner failed to present sufficient evidence of discriminatory conduct to withstand Apex's motion for summary judgment.  The petitioner argues that genuine issues of material fact exist as to whether Apex violated West Virginia Code § 23-5A-1, which provides as follows:

> No employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter.

This Court has previously held that

> [i]n order to make a prima facie case of discrimination under W.Va. Code, 23-5A-1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va. Code, 23-1-1, *et seq.*; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 701, 403 S.E.2d 717, 718 (1991).

Having clearly satisfied the first two elements of *Powell* (i.e., an on-the-job injury and the filing of a workers' compensation claim), the petitioner contends, in essence, that he also presented prima facie evidence of the third element:  that Apex "refused to put

7

him back to work" because he applied for workers' compensation benefits as a result of his injury. Specifically, the petitioner points to the unemployment compensation form on which Ms. Perry indicated that he was discharged from his employment at Apex because he was injured at work and received a workers' compensation settlement for the injury. The petitioner argues that this fact alone creates a genuine issue of material fact on his discrimination claim and that summary judgment was not appropriate. Apex argues, however, that the competent evidence clearly shows that the petitioner's filing of a workers' compensation claim was not a significant factor in Apex's decision not to rehire him in May of 2009. Rather, Apex argues that the evidence demonstrates that the petitioner was not rehired because there was no available work at the time he contacted Mr. Keaton in May 2009. Moreover, Mr. Keaton's undisputed testimony established that the petitioner *and many other general laborers* were hired "out of the union hall" for the purpose of working on the pipeline project in Boone County. Mr. Keaton testified that as the workers' jobs were completed, Apex "sen[t] them back to the union hall" and that "[t]here [were] lots of them we didn't bring back."

The petitioner also testified that he believed Mr. Keaton when he told him there was no available work when he contacted him in May of 2009. Moreover, Ms. Perry testified that she erroneously checked the "discharge" box on the petitioner's unemployment compensation form, and that, upon learning of her error, she immediately corrected it by personally contacting the unemployment compensation office to explain her mistake. As a

8

direct result of Ms. Perry's contact with the unemployment compensation office, the petitioner was awarded unemployment compensation benefits.[11]

Upon careful consideration of the evidence presented, we find that the petitioner failed to establish that his filing of a workers' compensation claim was a significant factor in Apex's decision not to rehire him in May of 2009. The undisputed evidence demonstrates that Ms. Perry made a clerical error on the petitioner's unemployment compensation form and that, as soon as she was made aware of her mistake, she contacted the unemployment compensation office and corrected it in order to ensure that the petitioner received the benefits to which he was entitled. Importantly, the petitioner does not dispute that he was one of many workers laid off when the Boone County project was completed.

Based upon all of the above, this Court concludes that the petitioner failed to adduce prima facie evidence giving rise to a genuine issue of material fact with regard to his claim of workers' compensation discrimination. Accordingly, the circuit court properly granted summary judgment on this issue in favor of Apex.

---

[11]There was a delay of approximately two weeks in the petitioner's receipt of benefits as a result of the clerical error in completing the form.

## B. Deliberate Intention Claim

The second issue for our review is whether the circuit court committed error in granting summary judgment on the petitioner's "deliberate intention" claim. As a general principle, the West Virginia Workers' Compensation Act provides immunity to covered employers for employee suits for "damages at common law or by statute" resulting from work-related injuries. W.Va. Code § 23-2-6 (2010); *see Sias v. W-P Coal Co.*, 185 W.Va. 569, 574, 408 S.E.2d 321, 326 (1991). An employer's immunity is lost, however, when it acts with "deliberate intention" to cause the employee's injury. W.Va. Code § 23-4-2(d)(2); *see Sias*, 185 W.Va. at 574, 408 S.E.2d at 326. If the deliberate intention exception applies, the employee may file an action for damages in excess of workers' compensation benefits. W.Va. Code §§ 23-4-6 and 2(c); *see Sias*, 185 W.Va. at 574, 408 S.E.2d at 326.

This Court has recognized that "'[a] plaintiff may establish a 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in [W.Va. Code § 23-4-2(d)(2)(ii) (2010)].' Syl. Pt. 2, *Mayles v. Shoneys, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990)." Syl. Pt. 3, *Tolley v. ACF Industries, Inc.*, 212 W.Va. 548, 550, 575 S.E.2d 158, 160 (2002). Under West

Virginia Code § 23-4-2(d)(2)(ii),[12] a plaintiff must prove the following five elements to

establish a deliberate intention cause of action:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the

---

[12]In addition to West Virginia Code § 23-4-2(d)(2)(ii), an alternate method of providing that an employer acted with deliberate intention is found in West Virginia Code § 23-4-2(d)(2)(i), which requires proof that an employer "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee.  This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of:  (A) Conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct[.]" *Id.  See* Syl. Pt. 1, *Mayles v. Shoneys, Inc.,* 185 W.Va. 88, 405 S.E.2d 15 (1990).  The petitioner's deliberate intention claim in the case *sub judice* alleges only a violation of West Virginia Code § 23-4-2(d)(2)(ii).

> employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
>
> (E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W.Va. Code § 23-4-2(d)(2)(ii)(A)-(E).

This Court has made clear that, pursuant to West Virginia Code § 23-4-2(d)(iii)(B), a court shall dismiss a deliberate intention action "upon motion for summary judgment if it finds . . . that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist." W.Va. Code § 23-4-2(d)(iii)(B). Each of the five statutory factors "is an essential element of a 'deliberate intention' cause of action, which a plaintiff has the ultimate burden to prove. Therefore, at the summary judgment stage, if a defendant should establish that no material issue of fact is in dispute on any one of the factors, and such a finding is in favor of the defendant, summary judgment must be granted to the defendant." *Mumaw v. U.S. Silica Co.*, 204 W.Va. 6, 11, 511 S.E.2d 117, 122 (1998). Finally, "'in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the

12

five factors.'" *Marcus v. Holley*, 217 W.Va. 508, 520, 618 S.E.2d 517, 529 (2005) (quoting *Mumaw*, 204 W.Va. at 9, 511 S.E.2d at 120)).[13]

As discussed in more detail below, we conclude that although the petitioner presented prima facie evidence as to whether there was a specific unsafe working condition, West Virginia Code § 23-4-2(d)(ii)(A), he failed to present prima facie evidence of the remaining statutory factors required to maintain a deliberate intention claim against Apex.

## Specific Unsafe Working Condition

The petitioner alleges that a specific unsafe working condition existed on the Apex job site "which presented a high degree of risk and a strong probability of serious injury or death." W.Va. Code § 23-4-2(d)(2)(ii)(A). According to the petitioner's liability expert, Dr. Gary S. Nelson, the specific unsafe working condition was Apex's failure "to physically safeguard the pipe . . . in a physically positive manner, from rolling [or] otherwise falling into the adjacent excavation where Mr. Smith was present." Dr. Nelson's report further indicated that

---

[13]As indicated above, the circuit court concluded that the petitioner failed to present prima facie evidence supporting four of the five statutory factors, West Virginia Code § 23-4-2(d)(ii)(A) through (D). The fifth factor (that the employee suffered a serious compensable injury as a proximate result of the specific unsafe working condition), set forth in subparagraph (E), was not addressed in the circuit court's summary judgment order and, likewise, is not addressed by the parties on appeal.

13

[t]his could have been done in an easily achievable combination of safeguards by the required use of iron stacks driven into the ground at each end of every pipe on the excavation side of such pipe, and as a secondary (backup), the routine piling of excavated earth (the construction of a small mound) at the edge of all excavations behind which pipe in storage would be placed in preparation for its transfer into the excavation under controlled (stable) conditions.

Special note: The routine practice and procedure established by Apex in an attempt (the key word is *attempt*) to secure stored pipe from rolling or otherwise prevent the pipe from falling into adjacent excavations was to 'find a nearby rock or clump of earth' to place at the base of the pipe to keep it from rolling. Such a haphazard method must be recognized as subject chance (high risk failure), the potential for such material to move or roll away from such pipe or otherwise crumble under the weight of the pipe, and therefore not a reliable method to secure such pipe.

Special note: Unlike the relatively hidden nature of rocks (etc.) to secure the pipe in this matter that are relatively small and hidden from view in terms [sic] required inspection, the use of iron stacks to secure pipe, stacks that would appear above the pipe after being driven into the ground, would provide a readily observable method to assure that such pipe was secure. . . . Apex failed to properly train worke[rs] regarding the proper methods to secure such pipe from movement.

For its part, Apex argues that the record demonstrates that securing the pipe was the petitioner's responsibility as a laborer and that the specific unsafe working condition alleged to have existed was caused by the petitioner's own carelessness in failing to secure the remaining pipe with the chock after the companion pipe was moved. Apex argues that it cannot be held liable for an unsafe working condition created by the petitioner's failure to

14

perform the duties and obligations of his job. Apex relies, inter alia, on *Mumaw*, in which this Court recognized that "where an employee creates a specific unsafe working condition by not following expected procedures, a deliberate intention cause of action cannot be maintained against the employer." 204 W.Va. at 12, 511 S.E.2d at 123.[14]   This Court agreed with the circuit court that, based upon the evidence, the employee, and not his employer, created the unsafe working condition, and thus, the plaintiff (the administrator of the deceased employee's estate) could not sustain a deliberate intention claim under West Virginia Code § 23-4-2(d)(ii). *Id.* at 12, 511 S.E.2d at 123.

Apex's argument notwithstanding, it is clear that the specific unsafe working condition is not alleged to have arisen from the petitioner's failure to chock the remaining pipe after the companion pipe was removed. Rather, through Dr. Nelson's report, the petitioner has presented at least prima facie evidence that the specific unsafe working condition was the manner in which Apex routinely secured its pipe. In reviewing the circuit court's summary judgment order, this Court reviews the underlying facts and inferences in the light most favorable to the petitioner, the non-moving party. In so doing, we conclude that the petitioner presented a genuine issue of material fact as to whether a specific unsafe working condition existed on the job site which presented a high degree of risk and a strong probability of serious injury, pursuant to West Virginia Code § 23-4-2(d)(ii)(A).

---

[14]In *Mumaw*, an employee died after falling through a trap door that he failed to close even though he had been directed to do so three times.

15

**Actual Knowledge**

We next address whether the petitioner has presented prima face evidence that, Apex, "prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury" it presented. West Virginia Code §23-4-2(d)(2)(ii)(B). This Court has emphasized that "[t]his is a high threshold that cannot be successfully met by speculation or conjecture." *Mumaw*, 204 W.Va. at 12, 511 S.E.2d at 123; *Coleman Estate ex rel. Coleman v. R.M. Logging, Inc.*, 226 S.E.2d 199, 207, 700 S.E.2d 168, 176 (2010). Indeed, the actual knowledge requirement "is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge." Syl. Pt. 3, in part, *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 634, 408 S.E.2d 385, 386 (1991). We have further clarified that a determination of whether an employer had actual knowledge "requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn."[15] Syl. Pt. 2, in part, *Nutter v. Owens-Illinois, Inc.*, 209 W.Va. 608, 609, 550 S.E.2d 398, 399 (2001).

---

[15]Moreover, "while a plaintiff may choose to introduce evidence of prior similar incidents or complaints to circumstantially establish that an employer has acted with deliberate intention, evidence of prior similar incidents or complaints is not mandated" under the deliberate intention statute. *Nutter*, 209 W.Va. at 667, 639 S.E.2d at 759, syl. pt. 2, in part.

Though not clearly articulated in his brief, the petitioner appears to argue that he has demonstrated that a genuine issue of material fact exists as to whether, prior to the petitioner's injury, Apex had actual knowledge that its workers were practicing an unsafe procedure with regard to the manner in which pipe was secured. The petitioner relies on Dr. Nelson's report, which stated that, due to the nature of Apex's

> daily work of laying pipe in excavated trenches, Apex (undeniably) knew (a) of the severe injury potential associated with the danger of heavy pipe rolling or falling into excavations from the adjacent embankment, (b) knew that such potential contains the clear risk of producing severe injury to workers working within such excavations; that is, they had a clear and reasonable subjective awareness of the high degree of risk and probability of severe injury (or death) associated with the potential for unsecured pipe rolling or falling into excavations where their workers were present, and (c) that such injury potential would dictate the focused attention on their part toward the positive elimination or control of related hazardous conditions or factors that cause such injury . . . .

However, Apex argues that the facts upon which Dr. Nelson relied in rendering his report were limited to those surrounding the accident at issue and that such evidence is not sufficient to show that, prior to the petitioner's injury, Apex had actual knowledge that a specific unsafe working condition existed and of the high degree of risk and the strong probability of serious injury it presented. W.Va. Code § 23-4-2(d)(ii)(B).

17

It is clear from our review of Dr. Nelson's report that he makes absolutely no reference to specific facts supporting his opinion that, *before the petitioner's injury occurred*, Apex actually knew of the existence of the specific unsafe working condition, and that the unsafe condition presented a high degree of risk and a strong probability of serious injury. In fact, under the "Preface to Opinions and Conclusions" section of his report, Dr. Nelson explained that the opinion section of his report intended to provide

> *foundational* opinions that enumerate various concepts, principles, and basic areas of knowledge or understandings that Apex knew about–that is, *they either knew about in fact as documented in the discovery process in this matter, doubtlessly knew about as such knowledge cannot be realistically or credibly denied as being universally known by workplace managers, or they otherwise reasonably possessed a conscious awareness and understanding of by virtue of the[ir] industry position, business operation, and related circumstances*–which taken as a whole, establish a basis for . . . [my] opinion and conclusions that address specific issues of causation.

(footnotes omitted and emphasis added). Notwithstanding the foregoing, and although Dr. Nelson's report listed the discovery documents reviewed in preparation of his report, the report itself makes no specific or substantive reference to any facts demonstrating that, before the petitioner's injury occurred, Apex had actual knowledge of the specific unsafe working condition. Moreover, the petitioner does not point to any evidence tending to show that Apex had "actual knowledge" within the meaning of the deliberate intention statute. To the contrary, the petitioner's evidence is based upon speculation that, prior to the petitioner's injury, Apex *reasonably should have known* of the unsafe working condition and its attendant degree of risk and probability of injury.

18

Based upon the foregoing, and viewing the evidence in the light most favorable to the petitioner, we conclude that the petitioner has failed to present prima facie evidence, either direct or circumstantial, that, prior to the petitioner's injury, Apex had actual knowledge that a specific unsafe working condition existed and of the high degree of risk and the strong probability of serious injury it presented, as required by West Virginia Code § 23-4-2(d)(ii)(B).

Given that the petitioner has failed to demonstrate that a genuine issue of material fact exists as to whether Apex had actual knowledge of the specific unsafe working condition, we find that the circuit court properly granted summary judgment in favor of Apex because the petitioner failed to prove all five statutory factors provided in West Virginia Code § 23-4-2(d)(ii). *Tolley*, 212 W.Va. at 550, 575 S.E.2d at 160, syl. pt. 3; *see* W.Va. Code § 23-4-2(d)(iii)(B) (specifically requiring dismissal of deliberate intention action if, upon motion for summary judgment, court finds "that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) . . . do not exist."); *Mumaw*, 204 W.Va. at 11, 511 S.E.2d at 122 (stating that each of five statutory factors is essential element of deliberate intention claim; therefore, at summary judgment stage, if defendant "establish[es] that no material issue of fact is in dispute on any one of the factors, and such a finding is in favor of the defendant, summary judgment must be granted to the defendant.").

19

Although we recognize that it is not necessary to the resolution of this appeal, we, nevertheless, proceed to address the remaining statutory factors required to prove the petitioner's deliberate intention claim.

**Violation of Specific Safety Statute, Rule,
Regulation or Industry Standard**

To withstand Apex's motion for summary judgment, the petitioner was required to present prima facie evidence that the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation or of a commonly accepted standard within the pipeline industry and was "specifically applicable to the particular work and working condition involved, as contrasted with . . . regulation[s]. . . generally requiring safe workplaces, equipment or working conditions[.]"  W.Va. Code § 23-4-2(d)(2)(ii)(C). The petitioner argues that he presented competent evidence of violations of OSHA regulations 29 C.F.R. § 1926.651(j)(2) and (k)(1), regarding "specific excavation requirements."[16]

---

[16]The petitioner also relies upon alleged violations of 29 C.F.R. § 1926.20(b)(1), (2) and (3), which are OSHA regulations identified as "General Safety and Health Provisions" and which provide as follows:

> (b) Accident prevention responsibilities.

> (1) It shall be the responsibility of the employer to initiate and

20

The provisions of 29 C.F.R. § 1926.651(j)(2) state as follows:

(j) Protection of employees from loose rock or soil.

(2) Employees shall be protected from excavated or other materials or equipment that could pose a hazard by falling or rolling into excavations. Protection shall be provided by

maintain such programs as may be necessary to comply with this part.

(2) Such programs shall provide for frequent and regular inspections of the job sites, materials, and equipment to be made by competent persons designated by the employers.

(3) The use of any machinery, tool, material, or equipment which is not in compliance with any applicable requirement of this part is prohibited. Such machine, tool, material, or equipment shall either be identified as unsafe by tagging or locking the controls to render them inoperable or shall be physically removed from its place of operation.

29 C.F.R. 1926.21(b)(2), states:

(b) Employer responsibility.

(2) The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.

However, the petitioner fails to offer any argument or set forth any evidence demonstrating that 29 C.F.R. § 1926.20(b)(1)-(3) and 29 C.F.R. § 1926.21(b)(2) were violated. This Court has explained that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.] Judges are not like pigs, hunting for truffles buried in briefs." *State, Dept. of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995). Finally, we reiterate that "[a]lthough we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W.Va. 294, 303, 470 S.E.2d 613, 621 (1995).

placing and keeping such materials or equipment at least 2 feet (.61 m) from the edge of excavations, or by the use of retaining devices that are sufficient to prevent materials or equipment from falling or rolling into excavations, or by a combination of both if necessary.

Under this regulation, protection from materials that could pose a hazard by falling or rolling into excavations shall be provided either by "placing and keeping such materials . . . at least 2 feet . . . from the edge of excavations, *or by the use of retaining devices that are sufficient to prevent materials . . . from falling or rolling into excavations*, or by a combination of both if necessary." *Id.* (emphasis added). The petitioner states only that "[t]he pipe was unsecured and not re-secured under the job site supervisor's direction. The pipe rolled into the excavation, striking Mr. Smith and causing serious injury."

The petitioner's argument notwithstanding, the undisputed evidence demonstrates that Apex workers had secured the pipe with a chock, which was sufficient to prevent the pipe from rolling into the trench. The pipe then became unsecured when the petitioner failed to move the chock flush to the remaining pipe after its companion pipe had been lifted with the side boom. The petitioner has failed to present prima facie evidence that 29 C.F.R. § 1926.651(j)(2) was violated by Apex.

The petitioner also alleges that Apex violated 29 C.F.R. § 1926.651(k)(1), which provides as follows:

22

(k) Inspections

(1) Daily inspections of excavations, the adjacent areas, and protective systems shall be made by a competent person for evidence of a situation that could result in possible cave-ins, indications of failure of protective systems, hazardous atmospheres, or other hazardous conditions. An inspection shall be conducted by the competent person prior to the start of work and as needed throughout the shift. Inspections shall also be made after every rainstorm or other hazard increasing occurrence. These inspections are only required when employee exposure can be reasonably anticipated.

The petitioner fails to set forth any evidence demonstrating that daily inspections were not performed or that this regulation was otherwise violated. In contrast, Apex points to specific testimony from Mr. Keaton indicating that he closely monitors the job site on a daily basis. The petitioner has failed to present prima facie evidence that 29 C.F.R. § 1926.651(k)(1) was violated by Apex.

In summary, the petitioner has failed to demonstrate that there are genuine issues of material fact as to whether the alleged specific unsafe working condition violated any of the federal safety regulations discussed herein.

**Intentional Exposure**

Lastly, we address whether the petitioner presented competent evidence "[t]hat notwithstanding the existence of the facts set forth in [West Virginia Code § 23-4-2(d)(ii)(A) through (C)] . . . the employer nevertheless intentionally thereafter exposed [the

23

petitioner] to the specific unsafe working condition." W.Va. Code § 23-4-2(d)(ii)(D). In order to establish the existence of intentional exposure in a deliberate intention claim, there "must be some evidence that, with conscious awareness of the unsafe working condition . . . an employee was directed to continue working in that same harmful environment." *Ramey v. Contractor Enterprises, Inc.*, 225 W.Va. 424, 431, 693 S.E.2d 789, 796 (2010) (quoting *Tolley*, 212 W.Va. at 558, 575 S.E.2d at 168). "In other words, this element, which is linked particularly with the [actual knowledge] element, is not satisfied if the exposure of the employee to the condition was inadvertent or merely negligent." *Sias*, 185 W.Va. at 575, 408 S.E.2d at 327.

As evidence that Apex intentionally exposed him to a specific unsafe working condition, the petitioner points to the fact that Mr. Keaton, his supervisor, "instructed him to work in the trench below the unsecured pipe," even though Mr. Keaton had "knowledge of safety violations and hazards." The specific evidence on which the petitioner relies is his own testimony that Mr. Keaton was present on the job site; that he "wanted us to get everything set up"; and that "if there was something unsafe, he should have said something to us right there and right then." The petitioner's testimony notwithstanding, and as we have already concluded, there is simply no evidence that Mr. Keaton had actual knowledge that the pipe was not chocked or that he (or anyone at Apex) directed the petitioner to work in the trench "with conscious awareness of the unsafe working condition." *Ramey*, 225 W.Va. at 431, 693 S.E.2d at 796. We therefore conclude that the petitioner has not presented prima

24

facie evidence that Apex intentionally exposed him to a specific unsafe working condition.

Having determined that the petitioner failed to demonstrate the statutory predicate for a "deliberate intention" claim, we find that the circuit court did not err in granting summary judgment in favor of Apex.

## IV. Conclusion

For the reasons set forth above, the order of the circuit court entered October 18, 2011, is hereby affirmed.

Affirmed.