# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Henrietta Stiltner and Wade Stiltner,**
**Plaintiffs Below, Petitioners**

**vs.)  No. 19-0126** (Wayne County 16-C-54)

**Wal-Mart Stores, Inc.,**
**Defendant Below, Respondent**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Henrietta Stiltner and Wade Stiltner, by counsel Kenneth P. Hicks, appeal the Circuit Court of Wayne County's January 14, 2019, order granting summary judgment in respondent's favor on Petitioner Henrietta Stiltner's deliberate intent claim. Respondent Wal-Mart Stores, Inc., by counsel Joseph L. Caltrider and William L. Burner, filed a response.[1] Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Henrietta Stiltner, an assistant manager for Respondent Wal-Mart Stores, Inc., ("Wal-Mart") at its Wayne County, West Virginia, location, sustained a broken arm and severely injured shoulder, back, and hip during a coworker's attempt to apprehend a suspected shoplifter on May 19, 2014. During this event, the coworker, Patty Adkins, an asset protection associate, summoned Ms. Stiltner to assist her in the apprehension. Ms. Adkins was leading the suspected shoplifter to the rear of the store when he twice attempted to flee. In his second attempt, the suspected shoplifter ran into Ms. Stiltner, knocking her to the ground and causing her injuries. On May 2, 2016, Ms. Stiltner filed a deliberate intent cause of action against Wal-Mart.[2]

---

[1] Respondent filed a motion to dismiss petitioners' appeal. By order entered on September 18, 2019, we refused respondent's motion.

[2] Ms. Stiltner's husband, Wade Stiltner, claimed loss of consortium.

Ms. Stiltner retained J. Patrick Murphy as an expert witness. Mr. Murphy, who provides "forensic expert witness services and security consulting," opined in his written report that Wal-Mart "violated a basic industry standard in [r]etail [l]oss [p]revention" by failing to ensure that Ms. Adkins had "complete[d] training and demonstrate[d] an adequate understanding of [her] duties before [she was] allowed to work unsupervised."[3] He further opined that Wal-Mart "knew or should have known that the lack of training, especially in this type of work, creates a dangerous work environment." But Mr. Murphy also noted that none of the thirteen Wal-Mart employees deposed in the underlying matter "knew that Ms. Adkins was not trained and should not be working unsupervised."

During Mr. Murphy's deposition, he expanded upon his opinions. The testimony he gave that was most damaging to Ms. Stiltner's case came when he was asked about industry standards regarding training:

Q: Are there any particular industry standards that apply to training programs for loss prevention, particularly with regard to training associates on how to conduct shoplifting detention?

A. No. I mean, as far as the framework of—or the nuts and bolts of how a particular company wants it done, it's—it's pretty varied. There are some core things that are common across the industry such as training, in the sense that you have to train your associates. . . .

Q. You said that you have to train your associates?

A. Yes, sir.

Q. Is there an industry standard that I could look up that supports that?

A. No, sir. But I'm telling you as somebody who's been involved in the retail industry most of his adult life, that there's not a major retailer out here that puts people to work, including cashiers, without training.

Q. Is there a particular standard rule/regulation, industry-wide, that would determine how much training a loss prevention associate should receive before they begin working with shoplifters and detaining shoplifters?

---

[3] In support of his opinion concerning Ms. Adkins's purported lack of training, Mr. Murphy observed that "[n]o proof of training was produced for [Ms.] Adkins," despite Wal-Mart's typically unfailing documentation of its employees' training. He also identified a number of ways in which Ms. Adkins purportedly deviated from Wal-Mart's asset protection policy, AP-09, in her apprehension and detention of the suspected shoplifter.

A. Well, that's specific to the company. So when we're looking for standards, we have to rely on the company's own policies and procedures as the standard.

Q. So, as we sit here today, could you identify any particular industry standard that says you should train your associates on these five things before they're allowed to begin detaining shoplifters? Could you point to any type of standard like that?

A. There is not one. . . .

. . . .

Q. Do you know if there is a standard, industry-wide, for how much or what a person should be taught before they begin detaining shoplifters?

A. There is none. Again, that's why you have to rely on the company's own standards.

Q. And so is there a standard for what an associate—how much an associate should be taught before they are allowed to detain shoplifters?

A. No, sir. Again, it's the company's own policies and procedures.

. . . .

Q: I'm asking you. Is there a commonly accepted and well-known safety standard within the industry or business of Wal-Mart that applied to Ms. Stiltner's case?

A: Absolutely.

Q. And what is it?

A. Absolutely. The well[-]known safety standard is—especially in loss prevention or asset protection is trained—only have trained personnel working in that department.

Q. Is there any written standard or guideline that supports that standard you've identified?

A. No.

. . . .

Q. Specifically, are there any written standards or guidelines which reflect a consensus safety standard in the industry or business of Wal-Mart that you've just identified?

A. No. There's—there's not a peer-reviewed body of work that relates to that. Again, in any of these cases, security loss prevention [has] no standards as an industry; therefore, you have to rely on the company's standards themselves.

Q. So if I wanted to go out and find some industry standard about how and when you train your associates to do shoplifter detention, I couldn't find it?

A. You're correct.

Finally, Mr. Murphy testified that

there is not a written standard as we talked about just a moment ago as to who you hire, how long you train them, and what the training is composed of. Yet, there is a consensus in the industry that you do not put untrained personnel in loss prevention or asset protection to apprehend shoplifters.

Wal-Mart filed a renewed motion for summary judgment,[4] arguing that, aside from demonstrating that Ms. Stiltner suffered a serious compensable injury, petitioners were unable to satisfy any of the other elements of their deliberate intent cause of action. Primarily relying on petitioners' failure to "identify any written specific safety standards that were violated by Wal-Mart in how they deal with shoplifters," the circuit court granted Wal-Mart's motion by order entered on January 14, 2019.[5] In that order, the court concluded that petitioners' "expert witness has failed to present prima facie evidence that his opinion is based on competent evidence of written safety standards within the industry and that Wal-Mart violated those standards by developing Policy AP-09 [Wal-Mart's asset protection policy] or by exposing [Ms. Stiltner] to a specific unsafe working condition." This appeal followed.

On appeal, petitioners challenge the circuit court's entry of summary judgment in Wal-Mart's favor, which we review de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[4] To comply with the circuit court's scheduling order, Wal-Mart filed a motion for summary judgment prior to deposing petitioners' expert witness. Petitioners ultimately never produced that witness for deposition and, later, substituted Mr. Murphy. Following his deposition, Wal-Mart filed its renewed motion for summary judgment.

[5] Initially, the court denied Wal-Mart's motion. But, after "accept[ing] that the 2005 Legislative amendment [to the deliberate intent statute] requires that such evidence [of a violation of a commonly accepted and well-known safety standard] must be demonstrated by competent evidence of **written** standards or guidelines which reflect a consensus within the industry," the court granted Wal-Mart summary judgment.

judgment as a matter of law." W. Va. R. Civ. P. 56(c). And

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 4.

At the time of Ms. Stiltner's injury, the deliberate intent statute, West Virginia Code § 23-4-2 (2005),[6] provided, in relevant part, that

> (d)(2) The immunity from suit provided under this section and under sections six and six-a, article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention." This requirement may be satisfied only if:
>
> . . . .
>
> > (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
> >
> > > (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
> > >
> > > (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
> > >
> > > (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved,

---

[6] This statute was amended in 2015, following Ms. Stiltner's workplace injury. The parties agree that the 2005 version is applicable in this case, as it was the version in effect at the time of her injury.

5

as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

With respect to motions for summary judgment, the statute further provided that

[n]otwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to rule 56 of the rules of civil procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist . . . .

*Id.*, § 23-4-2(d)(2)(iii)(B) (2005). In line with this subsection, we have recognized that

[e]ach of the five statutory factors "is an essential element of a 'deliberate intention' cause of action, which a plaintiff has the ultimate burden to prove. Therefore, at the summary judgment stage, if a defendant should establish that no material issue of fact is in dispute on any one of the factors, and such a finding is in favor of the defendant, summary judgment must be granted to the defendant."

*Smith v. Apex Pipeline Servs., Inc.*, 230 W. Va. 620, 628, 741 S.E.2d 845, 853 (2013) (citation omitted).

Petitioners assert that summary judgment was inappropriate because genuine issues of material fact exist as to each of the five elements of the deliberate intent statute. They argue that Wal-Mart's failure to sufficiently train Ms. Adkins and its other asset protection employees created a specific unsafe working condition, and they claim that Wal-Mart had actual knowledge of this specific unsafe working condition given that documentation confirming Ms. Adkins's training does not exist. Further, petitioners state that Ms. Adkins's breach of Wal-Mart's asset protection policy, AP-09, constituted a "breach[ of] the commonly accepted and well[-]known

6

safety standard and also the industry consensus standard."[7] Finally, petitioners assert that Wal-Mart intentionally exposed Ms. Stiltner to the identified unsafe working condition, and, as a result, she suffered serious compensable injuries.

Wal-Mart contests only petitioners' assertions of genuine issues of material fact as to the first three elements of Ms. Stiltner's claim: that a specific unsafe working condition existed, that it had actual knowledge of that specific unsafe working condition, and that the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, or a commonly accepted and well-known safety standard within Wal-Mart's industry or business. Because an employee's failure to establish a genuine issue of material fact as to any one of the essential elements of a deliberate intention cause of action requires the entry of summary judgment in the employer's favor, however, we need not determine whether a genuine issue of material fact exists with respect to all three contested factors. W. Va. Code § 23-4-2(d)(2)(iii)(B) (2005); *Smith*, 230 W. Va. at 628, 741 S.E.2d at 853. Rather, we focus our analysis on the third element, which pertains to whether the alleged specific unsafe working condition violated

> a state or federal safety statute, rule or regulation whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written

---

[7] In addition to AP-09, petitioners cite to certain standards set forth by the Independent Association of Professional Security Consultants. Petitioners submitted these standards in a proposed supplemental appendix before this Court, along with an affidavit from Mr. Murphy purportedly explaining why he mistakenly overlooked these standards in issuing his expert report and during his deposition. Wal-Mart urges the Court to reject these standards and affidavit, arguing that the standards are nothing more than general, non-specific standards for detaining shoplifters, and that Mr. Murphy's affidavit constitutes a "sham affidavit." *See* Syl. Pt. 4, *Kiser v. Caudill*, 215 W. Va. 403, 599 S.E.2d 826 (2004) (holding, generally, that "an affidavit that directly contradicts prior deposition testimony is . . . insufficient to create a genuine issue of fact for trial"). Wal-Mart also highlights that the documents were not presented to or considered by the circuit court.

On October 3, 2019, we refused petitioners' motion to supplement the appendix. These documents were not part of the record below.

> Although our review of the record from a summary judgment proceeding is *de novo*, this Court for obvious reasons, will not consider evidence or arguments that were not presented to the circuit court for its consideration in ruling on the motion. To be clear, our review is limited to the record as it stood before the circuit court at the time of its ruling.

*Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W. Va. 692, 700, 474 S.E.2d 872, 880 (1996). For these reasons, we decline to consider the standards or the affidavit included within petitioners' proposed supplemental appendix.

standards or guidelines which reflect a consensus safety standard in the industry or business.

W. Va. Code § 23-4-2(d)(2)(ii)(C) (2005).

In claiming that AP-09 constitutes a written standard or guideline reflecting a consensus safety standard in the industry, petitioners acknowledge that an employer's internal policies do not ordinarily satisfy this standard. *See Hunt v. Brooks Run Mining Co., LLC*, 51 F.Supp.3d 627, 634 (S.D. W. Va. 2014) (finding that employer's internal safety regulations were insufficient to establish a commonly accepted and well-known safety standard). But petitioners claim that Wal-Mart's "status as a retail giant" should elevate AP-09 to a commonly accepted and well-known safety standard. *See Handley v. Union Carbide Corp.*, 804 F.2d 265, 273 (4th Cir. 1986) (acknowledging that internal safety rules "might well be probative in establishing existing industry standards in some areas").

We begin by observing that, as recounted above, Mr. Murphy testified repeatedly during his deposition that there are no written industry standards that apply to training programs for loss prevention. He stated that the only industry standard is that "you have to train your associates," but he did not identify any written standard or guideline that reflects a consensus safety standard on how associates should be trained. Mr. Murphy was adamant in his assertions that "there is not a written standard . . . as to who you hire, how long you train them, and what the training is composed of."

Instead, to satisfy the third element of Ms. Stiltner's cause of action, Mr. Murphy claimed that you look to "the company's own policies and procedures," here AP-09. Petitioners cite *Handley*, wherein the court declined to find that the employer's safety rules set the standards for the industry. *Id.* at 273. The *Handley* Court acknowledged that "[i]nternal safety data of a single company might well be probative in establishing existing industry standards in some areas," but they did not do so in that case because "[t]here was also no evidence of the effects [the employer's] internal safety rules had on the rest of the industry" and no "evidence from which the jury could infer the weight [the employer's] policies carried within the industry." *Id.* at 273-74. Just as the *Handley* Court found that the "bald assertion that [the employer] is one of the leaders in its field is not sufficient" to demonstrate the purported weight the employer's internal safety rules carried within the industry, so too is petitioners' bald assertion that Wal-Mart is a "retail giant." In fact, Mr. Murphy testified that, "as far as the framework of—or the nuts and bolts of how a particular company [trains its associates to conduct shoplifting detention], it's—it's pretty varied," thereby dispelling any notion that Wal-Mart's AP-09 set the standard in the industry. Accordingly, we find that AP-09 does not constitute a "commonly accepted and well-known safety standard within the industry or business of the employer." W. Va. Code § 23-4-2(d)(2)(ii)(C). Petitioners have pointed to no other "state or federal safety statute, rule or regulation, . . . or . . . commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business." *Id.* Therefore, we find that they have failed to make a sufficient showing of this essential element and the circuit court properly granted summary judgment in Wal-Mart's favor.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

9